Our next case on the agenda this morning is case number 124538, People of the State of Illinois v. Leslie Moore. Mr. Eakin, or Ms. Eakin, please begin. Good morning, Your Honors. May it please the Court? Counsel. My name is Yasmin Eakin, and I represent the appellant, Leslie Moore. The issue in this case calls for a straightforward application of strickland to Mr. Moore's ineffective assistance of counsel claim. Leslie Moore was charged with unlawful use of a weapon by a felon. His prior felony conviction was for murder. Faced with these facts, a reasonably effective lawyer would try to prevent the jury from learning that Mr. Moore was a convicted murderer. Since the nature of his prior conviction was not relevant to proving his felon status. And here, counsel had an easy way to do that. Under this Court's decision in Walker, had counsel offered to stipulate to Moore's felon status, the trial court was required to accept the stipulation. And the name of the prior conviction would have been excluded. But instead of offering to stipulate, counsel agreed with the misapprehension by both the prosecutor and the judge that the law actually required disclosing the nature of the prior conviction to the jury. So, when the jurors heard the evidence, and were considering Mr. Moore's innocence or guilt for possessing a gun, in the back of their mind, they knew that he had previously been convicted of the most serious and violent felony under Illinois law. And one that involved taking another's life. In this way, the specter of his murder conviction, and its inherently prejudicial nature, loomed over the entire trial. Applying Strickland to these facts, show that counsel was ineffective. As this Court knows, Strickland has two components. Deficient performance and prejudice. Deficient performance in this case has not been seriously disputed. The trial court, before jury selection, brought up the issue about disclosing the nature of the prior conviction. And he asked the parties whether it should advise the jury of the nature of the conviction, or just that the defendant is convicted. And it was the prosecutor who answered, it's the nature of the conviction that's told to the jury. And then defense counsel agreed with the prosecutor's statement. The judge also confirmed, well, that's my understanding of the law, just so the record is clear. Of course, we know that under Walker, that understanding was wrong. In cases requiring proof of felon status, the nature of the prior conviction has no evidentiary significance. And so the record clearly shows that counsel's failure here to exclude the prior conviction evidence was not based on strategy, but rather on a misapprehension of the law that was shared by the prosecutor and the judge. Now, turning to prejudice, Strickland requires that we show there was a reasonable probability that the results of the proceedings in this case would have been different if the jury had not heard that Moore had been convicted of murder. And here are really two factors that made counsel's error prejudicial. The nature of the prior conviction and the closeness of the evidence in this case. Neither the majority in the appellate court or the state really addressed the inherent prejudice from the nature of Mr. Moore's prior conviction. But clearly, that's a fact that cannot be ignored in this case. We know from Walker that this type of prior conviction evidence generally has little probative value and creates a high risk of unfair prejudice to the defendant. It's essentially other crimes evidence. And the U.S. Supreme Court, in old chief, defined what unfair prejudice means in this context. It's the capacity of the evidence to lure the jury into finding a defendant guilty on a ground different from proof specific to the offense charge. And more specifically, the court explained, it carries the inherent risk of over-persuading the jury that the defendant is a bad person who is more likely to commit a charge of offense. Or worse, it calls for preventative conviction. Even if the jury believes that the defendant might have been momentarily innocent of the crime he's on trial for. And here we have both the bad character reasoning and the or worse scenario. Because the jury was only supposed to decide whether Mr. Moore knowingly possessed the gun found in the closed console of his car. His murder conviction obviously was far more egregious than the charge of offense. And though the evidence was that his murder conviction was from 1990, the jurors didn't know how long his sentence was. And they could have naturally speculated that he had only recently been released from prison. And now he was found with a gun in his car. The capacity of this evidence to inappropriately influence the jurors' decision and to persuade them to convict Mr. Moore as a preventative measure, regardless of the evidence on the offense charge, was very high. This is the kind of error that Strickland talks about as being prejudicial because it's pervasive effect on the inferences to be drawn from the evidence. It alters the entire evidentiary picture. And that brings me to the evidence in this case. In assessing whether counsel's error affected the fairness of trial, Strickland requires that we look at the totality of the evidence before the jury. And that's because a verdict, of course, only weakly supported by the record is more likely to have been affected by counsel's error than one where the evidence is overwhelming against the defendant. But at the same time, Strickland explained that prejudice is established even where counsel's error cannot be shown by a preponderance of the evidence to have determined the outcome. In other words, even when the chance of a different result is less than 50%. Now, in finding that Mr. Moore wasn't prejudiced, the majority completely failed to look at all the evidence. They referred only to Officer Hannon's, quote, testimony. And when I say, quote, testimony, I mean that one word. That's it. They did not look at the substance of his testimony. They did not look at any evidence going to Officer Hannon's credibility. And they completely ignored Mr. Moore's testimony and the testimony of his witness, Sherry Walls, as if it did not exist. And for the most part, the state does the same. In its brief, it contends that Officer Hannon's testimony foreclosed any possibility of a different result at trial. And the state, again, ignores the evidence presented by the defense. And now, by contrast, Justice Holdred, in his dissent, did consider all the evidence presented at trial and found that it was close so that there was a reasonable probability that prior conviction evidence tipped the scales against Mr. Moore. And Justice Holdred was right. This is a close case. It involved a credibility contest between Officer Hannon's version of events and the version presented by Mr. Moore and his witness, Ms. Walls. Officer Hannon testified that he pulled Mr. Moore over for the traffic violation of failing to signal within 100 feet of a stop sign and speeding. He said that as he pulled up behind the car, he saw Mr. Moore. He claimed Mr. Moore made a movement toward the center council. And then when he approached Mr. Moore, he said he immediately put his hands up in the air. He was acting very nervous during the stop. He went back. He checked his license and insurance, which were valid. And when he came back, he felt that Mr. Moore was still acting nervous. So he ordered him out of the car, asked him why he was so nervous, and he said that Mr. Moore volunteered, I quote, have a loaded firearm in the front center council of my car. The state also presented a video of the traffic stop. But there was no audio for it because Officer Hannon, knowing that it was malfunctioning, just decided not to get it fixed. And as Justice Holder found, without the audio, there was no corroboration for this statement that Mr. Moore allegedly made to Officer Hannon. Officer Hannon also did not submit the gun for fingerprints, so there was no extrinsic evidence to corroborate his testimony. On the other hand, Mr. Moore denied reaching towards the council. He denied being nervous. And then he said he never told Officer Hannon there was a gun in the car because he didn't know there was a gun in the car. And Sherry Walls explained why he wouldn't let down. The gun was hers. She had accidentally left it in his car the day before when she borrowed it to move. And she literally brought the receipts. She brought the receipts that verified the purchase of the gun and that the gun was hers. She also testified that she did not realize that she had left the gun in the car until the next day and that she had never told Mr. Moore that she had put the gun in his car. So in the end, this case presented the classic closely balanced case. The jury was faced with two plausible versions of events, no extrinsic evidence corroborating or contradicting either side. And they were tasked with deciding whose version to believe. So telling the jurors that Mr. Moore had been previously convicted of murder unjustifiably made the state's version more plausible and tipped the scales against Mr. Moore. Isn't that a risk always, though, with any kind of a felony? Your Honors, this court addressed that actually in Walker, and it's addressed in Wiltship. There's always a risk that the jurors obviously are going to know that Mr. Moore, the defendant, is a felon because that's the charge. But what Walker talks about is the additional risk of naming the nature of the conviction because that carries the unfair prejudice to the defendant. And in this case, it couldn't be any worse prejudice. I mean, it is the most, it's a violent felony. It's more violent than the offense charge. It's the most serious felony. It's exactly the type of conviction that you don't want the jurors to think, speculate about, or think that the defendant had committed. So the prejudice, the unfair prejudice that attaches to the naming the conviction is far greater than just telling the jurors that, you know, the defendant stipulates that, yes, he was a felon. Is it per se? Is it a per se standard if it's murder? I would say that under a Strickland analysis, if counsel is able to articulate some type of strategy, it's always going to depend on the facts of the case. So I suppose if there is some type of strategy, and I'd be hard-pressed to find one in the case of murder, that counsel wants the jurors to know that there's a murder, the defendant was previously convicted of murder, then you would look to see if that was a reasonable strategy within the context of that case. I have to say that there would be, I cannot think of a scenario where that would be the case, especially a murder conviction in a gun case since there's an inherent risk, a link between murder and using a gun. But even if you had per se, let's say you would say that was per se deficiency not to stipulate and counsel doesn't articulate a reason, you would always have to still show that it was prejudicial under Strickland, the second prong, and that's, again, going to depend on the facts of the case. I suppose maybe in a case where the evidence was completely overwhelming against the defendant, you wouldn't meet the standard then. Thank you. So this is why, in this case, the nature of the conviction was highly prejudicial. And as Justice Holdridge found, based on that and the fact that the evidence was close, there was a reasonable probability of a different result if counsel prevented the jury from considering the evidence. If there are no further questions, Your Honors, just based on the circumstances of this particular case, counsel's performance was ineffective and denied Mr. Moore his right to a fair trial, and we therefore ask this Court reverse his conviction and remand for a new trial. Thank you. Thank you. May it please the Court, counsel. Good morning, Your Honors. Assistant Attorney General Richard Cook on behalf of the people of the State of Illinois. Defense counsel in this case was not ineffective because the defendant was not prejudiced by his performance. Counsel, excuse me, that's your only argument. Is that right? Correct. So you're not disputing that defendant's counsel's failure to stimulate on the merits was not the right move by him. Is that correct? We don't concede that it was not a matter of trial strategy. I think on this record it's hard to say for sure whether it was or not. However, reaching that issue is unnecessary under Strickland because we can show that the defendant is not prejudiced by counsel's performance. Correct. You fail to address the other point in your brief, the trial strategy portion. You fail to address that in your brief, right? That is correct. It's not addressed in the brief. Okay. So your primary, we can at least say your primary focus is prejudice. Yeah, that's correct. Okay. Counsel, did I hear you say your, I can't remember exactly how you phrased it, but it could be trial strategy? It could potentially be trial strategy. Well, what would that strategy be? How would it be beneficial? Again, on this record it's hard to say for sure. I think it's certainly possible that defense counsel thought maybe I'll just portray the defendant as being open and honest, present this, get it out of the way and say, yeah, he made this mistake and since then he's lived a sustaining life, that sort of thing. Again, it's hard to say for sure exactly what trial counsel was thinking at the time. So on the record it's hard to tell for sure what that strategy was. In any event, the defendant was not prejudiced by counsel on this though because there's simply no reasonable probability that had defense counsel offered to stipulate this prior conviction that the results of the proceeding would have been different. And we know this because the conviction itself was only mentioned a few times during the trial itself. In the state's case in chief, it was mentioned only a single time. And when they did mention it, they pointed out that the defendant was previously convicted of murder, but it was in 1990. That is in the record. And it's actually at record page 309 if I'm not mistaken. And then beyond that, they only ever mentioned it again in discussing proof of defendant's felon status during the closing argument. Was counsel correct that the evidence was close in this case? You had the officer giving one version of events, and you had the defendant and his witness giving another version. No, Your Honor. We believe the evidence in this case overwhelmingly supported the verdict. And that's because although there are these two competing testimonies, you do have video evidence, and that evidence does corroborate Deputy Hannon's testimony and shows that the defendant did admit to felons in the car. Could you hear what the witnesses were saying? You could not hear what they were saying, but watching the video in light of the testimony, I think you can certainly draw strong inference that Deputy Hannon's testimony was a credible testimony here. Because, for instance, they both testified of very similar aspects of the stop. They both agreed the defendant was stopped, asked out of the car, that he was handcuffed for safety, and that a gun was ultimately recovered. However, where the testimony differs, only Hannon's testimony makes sense in light of the video. He says that the defendant admitted that there was a handgun in the center console of the car, and that prompted Hannon to handcuff him out of concern for safety. And then after doing that, he calls for backup. The defendant, on the other hand, provides no explanation for why he was handcuffed. He says it was for safety, but there was no underlying purpose to that, to why there was a safety concern. Or why backup would need to be called. And then after that, you can also see that when Deputy Hannon actually goes to search the car itself, he goes straight to the driver's side and is only in the car for approximately 12 seconds, whereas he testifies, he finds a gun there, he attempts to disarm it, and after he's unable to do so, puts it down and returns to his partner, who then recovers the gun. As the defendant suggests, Deputy Hannon would have to go there without knowing at all what he's looking for, and just so happened to find a gun in the first place he looks after only a few seconds. I think in light of the video and the testimony of the parties, it's clear that Deputy Hannon's testimony overwhelmingly supports the verdict here. And then going back to the conviction itself, it's also worth noting that after that was discussed at trial, the jury was given a limiting instruction informing them that they should only consider that for the limited purpose of establishing a defendant's felon status, and that we presume the jury followed. So in any event, in light of those factors, we believe that the defendant was not prejudiced by counsel's performance here. And we would otherwise ask that this Court affirm the appellate court's decision. If there are no further questions, thank you. We would ask that you affirm the appellate court. Thank you, Ms. Egan. Please go ahead. Your Honor, first, as to counsel's position, it's hard to say from this record. We just can't tell whether or not this was strategy or not.  The prosecutor basically told the court that the law required that the nature of the conviction be disclosed to the jury, and defense counsel agreed that that was the law. And then the trial court also erroneously found that that was his understanding of the law, too. So clearly, allowing the nature of the conviction, the record is clear, allowing the nature of the conviction to be disclosed to the jury was based on a misapprehension of the law and not based on any type of strategy at all, not in this record. Counsel also mentions, contends that the evidence of prior conviction was only mentioned one time during trial. That's not true. The court told the prospective jurors when he read the indictment to them that Mr. Moore was charged with unlawful use of a weapon by a felon and that the felon being a prior conviction for murder. So it was the first thing the jurors heard. Then they heard it again in the middle of trial when the evidence was entered. And the closing arguments were not as benign as the state suggests. And, in fact, they parallel in much the way the state used it in Walker, where this court found that the state's repeated references to the name of the prior conviction made the evidence prejudicial. In Walker, the prosecutor referred to the prior conviction by name when it was defining the charges against the defendant. Here, the prosecutor did the same. In Walker, the prosecutor further elaborated by telling the jurors that one of the propositions it had to prove was that the defendant previously had been convicted of unlawful possession of a controlled substance with intent to deliver. Here, the prosecutors told the jurors that one of the propositions it had to prove was that the defendant had previously been convicted of the offense of murder. In Walker, the prosecutor told the jury that based on the certified copy of conviction entered into evidence, they knew that Walker was convicted of the drug charge. Here, the prosecutor told the jurors that you heard testimony through, quote, you heard testimony through that prior conviction. It was entered into evidence where the defendant was convicted of murder back in 1990. That document was entered. It's part of the evidence. It was admitted. And you can consider that when you deliberate. We've proven beyond a reasonable doubt that the defendant was previously convicted of murder. And that's on page 398 of the record. And, in fact, here the state went one step beyond Walker. They brought it up again when, despite the fact that defense counsel did not dispute that Mr. Moore had been previously convicted of murder, either at trial or any time during his closing argument, the prosecutor in rebuttal reminded the jury just one last time that the reason Mr. Moore could not possess a gun lawfully was because of his prior conviction for murder. So in Walker, the state's theory was that it was a drug deal gone bad, so this court found the prejudice because the prior drug conviction made its theory more plausible. But the inherent link between guns and murder made the state's use of the murder conviction prejudicial here, too. The jury could use that evidence to infer that Mr. Moore was a bad person who was more likely to possess a gun. And that's how that made the state's theory more plausible in this case. The state tries to argue that the video evidence corroborated Officer Shannon's testimony for two reasons. First, they say that, you know, why else would he handcuff him if Mr. Moore had not made the statement to him? Again, Mr. Moore said he was just handcuffed because the officer said it was necessary for officer safety. Two versions. It was up to the jurors to decide which one was credible. As I tried to show in my reply brief, it's not improbable that an officer might handcuff a defendant or search a car on a hunch without having grounds to do so and to come up with a post hoc legal basis for doing so. I tried to show in my reply that this has happened. And actually, on a closer review of the video, it shows that after the officer handcuffed Mr. Moore, he patted him down, which is consistent, of course, with officer safety reasons. But a few seconds later, as they're waiting for backup, at 22 minutes and 19 seconds, Hannah just reaches over, pulls up Mr. Moore's shirt, and starts digging into his left pocket. Now, nobody testified as to that because he found nothing. There was no reason to testify to that. But it does show that, you know, an officer can detain or search without necessarily having the reasons to do so. I guess I just want to say that ultimately, then, the issue of whether he handcuffed the defendant because of this alleged statement or because of whether he told Mr. Moore that he was doing it for officer safety was a credibility issue for the jurors to decide. And it certainly didn't take the case from close to overwhelming. And again, Your Honors, with that, I think we've shown that the record clearly shows that counsel's performance was deficient. It's not been seriously disputed. The record clearly shows that the evidence is close in this case, and therefore, counsel's error prejudiced Mr. Moore. And for all those reasons, we ask this Court to reverse Mr. Moore's conviction and to remand for a new trial. Thank you. Case number 124538, Cooper v. Leslie Moore, will be taken under advisement as Agenda Number 6. Thank you very much, Ms. Deacon, and thank you also, Mr. Cook, for your arguments today.